IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

FILED
MAY 25 2001
ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY ____65____ DEPUTY

| | |
|---|---|
| OKLAHOMANS FOR LIFE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case Number CIV-00-1163-C |
| vs. ) | |
| ) | |
| (1) JOHN DEWITT LUTON, in his ) | |
| official capacity as Chairman of the ) | |
| Oklahoma Ethics Commission; ) | |
| (2) HELEN G. COLE, (3) KEN ELLIOT, ) | |
| (4) HOBY HAMMER, and (5) MARK D. ) | |
| LYONS, in their official capacities as ) | |
| Commissioners of the Oklahoma Ethics ) | |
| Commission; (6) TIMOTHY HARRIS, ) | |
| in his official capacity as District Attorney ) | |
| for the Fourteenth District of Oklahoma ) | |
| and as representative of the class of ) | |
| District Attorneys in the State of ) | |
| Oklahoma; (7) W.A. DREW ) | |
| EDMONDSON, in his official capacity ) | |
| as Attorney General for the State of ) | |
| Oklahoma, ) | |
| ) | |
| Defendants. ) | |

DOCKETED

## **ORDER**

Before the Court is Plaintiff's Motion for Summary Judgment. Defendants filed a Response to which Plaintiff filed a Reply. The matter is now at issue.

### **I. BACKGROUND**

Plaintiff is a nonprofit corporation organized to promote the beliefs of its members regarding the sanctity and necessity of protecting human life. As part of its mission, Plaintiff seeks to disseminate candidate surveys and newsletters setting forth the views of the

organization. Plaintiff receives more than 10% of its total revenues from business corporations or entities. Plaintiff then uses this money to publicize the position of candidates for elected office on various issues of importance to Plaintiff.

Concerned about possible liability, Plaintiff sought an opinion from the Oklahoma Ethics Commission as to whether certain of Plaintiff's activities were subject to Oklahoma's campaign finance statutes and rules. After being informed that, in the Commission's opinion, Plaintiff's actions are subject to the statutes and rules, Plaintiff brought the present action seeking to have certain of the statutes and rules overturned as unconstitutional.[1]

Plaintiff brought the present motion arguing the undisputed facts reveal the statutes are facially unconstitutional and unconstitutional as applied to Plaintiff. Specifically, Plaintiff challenges: (a) the definition of "contribution" in 21 Okla. Stat. § 187(7)(a)(2) and Oklahoma Ethics Commission Rule § 257:1-1-2; (b) the definition of "political action committee" in 21 Okla. Stat. § 187(13)(a) and Oklahoma Ethics Commission Rule § 257:1-1-2; (c) the definition of "independent expenditure" in Oklahoma Ethics Commission Rule § 257:1-1-2; (d) the official State policy that disbursements for issue advocacy are "independent expenditures;" (e) the official State policy that treats disbursements for issue advocacy as "coordinated expenditures;" (f) the official State policy that an organization has a primary purpose of supporting or opposing candidates within the definition of "political action committee" if the

---

[1] The challenged enactments fall within two categories. Those found in Title 21 of the Oklahoma Statutes are statutes passed by the Oklahoma Legislature, while those found in Title 74 are rules promulgated by the Oklahoma Ethics Commission which are then adopted by the Oklahoma Legislature.

organization accepts contributions or makes expenditures in excess of $5,000.00; and (g) the official State policy that treats expenditures for issue advocacy as "supporting or opposing" candidates.

Defendants respond by arguing Plaintiff's alleged undisputed facts are based solely on its Complaint and, therefore, summary judgment is improper. Defendants also argue additional discovery is needed to determine if the challenged statutes actually apply to Plaintiff's activities.

## II. STANDARD OF REVIEW

Because Plaintiff challenges the constitutionality of certain statutes and rules on facial grounds, the present motion is not subject to the usual rules regarding a summary judgment decision. Questions of fact are not at issue. Rather, the Court must decide, as a matter of law, if the challenged statutes and rules pass constitutional muster. "[A] first amendment challenge to the facial validity of a statute is a strictly legal question; it does not involve the application of the statute in a specific factual setting." ACORN v. City of Tulsa, Oklahoma, 835 F.2d 735, 740 (10th Cir. 1987).

Defendants argue additional discovery is necessary before the definitions can be properly evaluated. However, if the definitions are found unconstitutional on their face it is unnecessary to undertake an "as applied" analysis because regardless of the factual situation the definitions are unconstitutional. Thus, resolution of Plaintiff's facial challenge is properly before the Court and no additional discovery is necessary at this time.

## III. DISCUSSION

As an initial matter the Court finds Plaintiff faces a credible threat of prosecution under the challenged statutes and rules and, therefore, has standing to challenge the definitions. Citizens for Responsible Government State Political Action Committee v. Davidson, 236 F.3d 1174, 1189 (10th Cir. 2000).

The parties are in dispute regarding the standard the Court must apply in evaluating the facial constitutionality of these statutes. Defendants, citing Rust v. Sullivan, 500 U.S. 173 (1991), argue the Court must uphold the statute or rule unless the regulation can never be applied constitutionally. Plaintiff argues that rule does not apply in First Amendment cases, citing West v. Derby Unified School Dist. No. 260, 206 F.3d 1358 (10th Cir.), cert. denied, ___ U.S. ___, 121 S.Ct. 71 (2000). However, the rule in this case is much simpler.

In Buckley v. Valeo, 424 U.S. 1 (1976), the Supreme Court set forth the guidelines by which campaign finance legislation must be measured and established the distinction between "issue advocacy" and "express advocacy." "Since 1976 the Court has relied on Buckley as authority for the general rule that limits on political expression are contrary to the First Amendment." Grant v. Meyer, 828 F.2d 1446, 1451 (10th Cir. 1987). Recently, the Tenth Circuit solidified what constitutes political expression:

> According to the Court, only communications containing words "such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject,'" would be subject to regulation as "express advocacy." Ten years later, the Court clarified that express words of advocacy were not simply a helpful way to identify "express advocacy," but that the inclusion of such words was constitutionally required. **Thus, communications that do not contain express words advocating the election or defeat of a**

4

> **particular candidate are deemed issue advocacy, which the First Amendment shields from regulation.**

Davidson, 236 F.3d at 1187 (citations omitted) (emphasis added). Defendants argue it is not necessary that the specific words from Buckley be used before a communication becomes express advocacy. Plaintiff argues that the Tenth Circuit was unequivocal and unless the communication contains one of the "magic words" set out in Buckley, it is issue advocacy and not subject to regulation.

The ruling of the Tenth Circuit is clear -- the "magic words" from Buckley provide a clear line of demarcation and are required to prevent encroachment on issue advocacy. Thus, the challenged statutes and rules must be narrowly tailored to reach only those communications which contain such words of express advocacy. Any definition which reaches issue advocacy is unconstitutional. With this background in mind, the Court will consider the statutes and rules challenged by Plaintiff.

*1. Independent Expenditure.*

> "Independent expenditure" means an expenditure made by a person to advocate the election or defeat of a clearly identified candidate, or, taken as a whole and in context, expressly urges a particular result in an election, but which is not made to, controlled by, coordinated with, requested by, or made upon consultation with a candidate, committee, treasurer, deputy treasurer or agent of a committee.

74 Okla. Stat., Ch. 62, App., § 257:1-1-2.

The phrase "taken as a whole and in context, expressly urges a particular result in an election" extends the reach of the definition too far. It impermissibly leaves open to interpretation whether the speech is issue advocacy or express advocacy, and thus allows

5

regulation of issue advocacy.  Iowa Right to Life Committee, Inc. v. Williams, 187 F.3d 963, 969 (8th Cir. 1999).  The phrase broadens the potential reach of the statute to such an extent as to impose doubt regarding its reach and thereby chill potential issue advocacy.  Buckley, 424 U.S. at 43 (quoting Thomas v. Collins, 323 U.S. 516, 535 (1945)).  Further, the definition is not narrowly tailored to protect a compelling state interest.  To date, the Supreme Court has identified only the prevention of corruption or the prevention of the appearance of corruption as a legitimate and compelling state interest to support a restriction on campaign finance.  Federal Election Comm'n v. National Conservative Political Action Committee, 470 U.S. 480, 496-97 (1985).  Defendants have not argued the present definition protects either interest.  Nor does it appear to the Court the definition is tailored to protect that interest.  Thus, the definition of "independent expenditure" is facially unconstitutional.

Next the Court must determine if the definition can be saved.

> Courts employ two mechanisms to preserve unconstitutional statutes from wholesale invalidation.  First, if a statute is readily susceptible to a narrowing construction that will remedy the constitutional infirmity, the statute will be upheld.  If the language is not readily susceptible to a narrowing construction, but the unconstitutional language is severable from the remainder of the statute, "that which is constitutional may stand while that which is unconstitutional will be rejected."

Davidson, 236 F.3d at 1194 (citations omitted).  Before a statute can be narrowed it must be "readily susceptible" to such construction.  Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 397 (1988).  Here, to bring the statues and rules within constitutional parameters requires eliminating the offending phrase -- "taken as a whole and in context, expressly urges

6

a particular result in an election." Once that phrase is eliminated, the statute's reach is limited to express advocacy and is, therefore, permissible.

*2. Contribution.*

Plaintiff next challenges the constitutionality of the statutory and rule-based definitions of contribution. The challenged definitions read as follows:

> 7. a. "Contribution" means and includes:
>
> . . .
>
>> (2) an expenditure made by a person or committee, other than a candidate committee, with the cooperation of, or in consultation with, a committee, a candidate, candidate committee, or candidate's agent or that is made in concert with, or at the request or suggestion of, a candidate, candidate committee, or candidate's agent,

21 Okla. Stat. § 187(7)(a)(2).

> "Contribution"
>
> (1) means and includes:
>
> . . .
>
>> (B) an expenditure made by a person or committee, other than a candidate committee, with the cooperation of, or in consultation with, a committee, a candidate, candidate committee, or candidate's agent or that is made in concert with, or at the request or suggestion of, a candidate, candidate committee, or candidate's agent;

74 Okla. Stat., Ch. 62, App., § 257:1-1-2.

These definitions do not suffer the same fate as the definition of "independent expenditure." Despite Plaintiff's arguments to the contrary, these definitions do not impose a facially unconstitutional restriction on its First Amendment rights. In <u>Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.</u>, 479 U.S. 238 (1986), the Supreme Court

7

recognized restrictions on contributions require less compelling justification than restrictions on independent spending. Id. at 259-60. In Buckley, the Supreme Court explained the rationale permitting regulation of contributions:

> A limitation on the amount of money a person may give to a candidate or campaign organization thus involves little direct restraint on his political communication, for it permits the symbolic expression of support evidenced by a contribution but does not in any way infringe the contributor's freedom to discuss candidates and issues. While contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor.

Buckley, 424 U.S. at 21. Without question, the State has a legitimate interest in regulating the extent of contributions made in the political arena. Nixon v. Shrink Missouri Gov't PAC, 528 U.S. 377, 387-88 (2000). The definitions at issue here are narrowly defined to protect that interest and do not unnecessarily impinge on constitutional rights.

Plaintiff argues Defendants have established an enforcement policy which renders the definitions of contribution overly broad. However, on their face the definitions govern nothing more than giving money to a candidate and thus are permissible regulation. To the extent Plaintiff challenges the application of the definitions, questions of fact prevent summary judgment at this time.

*3. Political Action Committee.*

Finally, Plaintiff challenges the definitions of Political Action Committee ("PAC") found in the statutes and the rules. The challenged provisions read as follows:

8

13. "Political action committee":

    a. means a combination of at least two individuals, or a person other than an individual:

        (1) with the primary purpose of:
            (a) supporting or opposing a candidate or candidates, or a party committee, except those required to file with the Federal Election Commission, . . .

        and

        (2) which accepts or gives contributions or makes expenditures from a joint account aggregating at least Five Hundred Dollars ($500.00) during a calendar year, and

21 Okla. Stat. § 187(13)(a).[2]

"Political action committee"

(1) means a combination of at least two individuals, or a person other than an individual:

    (A) with the primary purpose of:
        (i) supporting or opposing a candidate or candidates, or a party committee, except those required to file with the Federal Election Commission, . . .

    and

    (B) which accepts or gives contributions or makes expenditures from a joint account aggregating at least five hundred dollars ($500) during a calendar year.

74 Okla. Stat., Ch. 62, App., § 257:1-1-2.[3]

---

[2] Although Plaintiff purports to challenge § 187(13)(a) only subpart (1)(a) is addressed in argument. Therefore, the Court has not considered the constitutionality of (1)(b).

[3] Although Plaintiff purports to challenge § 257:1-1-2 only subpart (A)(i) is addressed in argument. Therefore, the Court has not considered the constitutionality of (A)(ii).

9

Plaintiff argues these definitions suffer from the same flaw that afflicted the "independent expenditure" definition; that is, they attempt to regulate areas of issue advocacy and thus are unconstitutional. However, the plain language of the definitions does not reach to the extent argued by Plaintiff. Before the requirement to register as a PAC is triggered there must be contributions or expenditures in excess of $500.00 **and** the primary purpose must be to support or oppose a candidate. Certainly there is little difference between the "magic words" of Buckley and the words "support or oppose" contained in the definition in question. Buckley included "support" in its litany of words indicating express advocacy. Thus, the definitions, as written, regulate only entities which engage in express advocacy regarding a candidate and use or collect money to do so. Consequently, they are facially constitutional.

Plaintiff raises arguments concerning how the definitions are enforced in general and specifically how they are enforced in relation to Plaintiff. As noted by Defendants, questions of fact remain regarding the "as applied" constitutionality of the definitions. For example, before the Court could apply the major purpose test, additional information regarding Plaintiff's activities is necessary.

*4. Enforcement Policies.*

Plaintiff also challenges certain enforcement policies allegedly imposed by the Ethics Commission. According to Plaintiff, the Ethics Commission has indicated, in response to inquiries, it will enforce certain of the statutes and/or rules in a manner that Plaintiff claims is unconstitutional. Although Plaintiff has directed the Court to certain documentary material

10

which appears to support these claims, questions of fact remain regarding the actual application of the ethics opinions. Further, Defendants have indicated that some of the alleged improper applications may be resolved once additional information is gained from Plaintiff. Therefore, at this time, summary judgment is improper on this issue.

## 5. *Permanent Injunction.*

Plaintiff requests a permanent injunction be entered against Defendants preventing the enforcement of the alleged unconstitutional provisions.

> To obtain injunctive relief, a party must establish that: (1) it will suffer irreparable injury unless an injunction is issued; (2) its threatened injury outweighs any harm the proposed injunction may cause to the opposing party; (3) it will likely prevail on the merits of the litigation; and (4) an injunction, if issued, would not be adverse to the public interest.

Chemical Weapons Working Group, Inc., v. U.S. Dep't of the Army, 111 F.3d 1485, 1489 (10th Cir. 1997). When considering a permanent injunction, the third element is changed to require a demonstration of success on the merits. Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n. 12 (1987).

Here, Plaintiff has shown actual success on the merits only as to one of its claims, i.e., a portion of the definition of "independent expenditure." Application of the definition without the offending clause removed would infringe First Amendment rights and thereby cause irreparable harm. Once the offending phrase is removed the definition is constitutional and the harm is abated. Likewise, the public interest is served by striking the unconstitutional clause. Finally, the balance of hardships in this case favors issuing an injunction striking the offending clause. The protection of constitutional rights regarding issue advocacy clearly

11

outweighs any interest the State may have in regulating campaign finance. Accordingly, a permanent injunction shall issue barring Defendants from enforcing the clause "taken as a whole and in context, expressly urges a particular result in an election" in the definition of "independent expenditure."

## IV. CONCLUSION

The phrase "taken as a whole and in context, expressly urges a particular result in an election" in the definition of "independent expenditure" in 74 Okla. Stat., Ch. 62, App., § 257:1-1-2, impermissibly extends the reach of the definition to issue advocacy and is therefore declared unconstitutional. Plaintiff is entitled to a permanent injunction barring enforcement of the definition if it includes the offending phrase. Plaintiff has failed to demonstrate the statutes and rules defining "contribution" found at 21 Okla. Stat. § 187(7)(a)(2) and 74 Okla. Stat., Ch. 62, App., § 257:1-1-2, and "political action committee" found at 21 Okla. Stat. § 187(13)(a) and 74 Okla. Stat., Ch. 62, App., § 257:1-1-2. are facially constitutionally infirm. Questions of fact remain regarding the constitutionality of these provisions as they may be applied to Plaintiff. Likewise, questions of fact remain concerning the constitutionality of Defendants' enforcement policies.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 25th day of May, 2001.

ROBIN J. CAUTHRON
UNITED STATES DISTRICT JUDGE